## CONTINUATION OF APPLICATION FOR SEARCH WARRANT

I, Andrew Holt, being duly sworn, depose and state the following:

**I.      Introduction**

1. I make this continuation as part of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – a cellular telephone, as described in Attachment A – that is currently in the possession of law enforcement, and the extraction of electronically stored information from that property as described in Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") have been so employed since March 2007.  Upon being hired by ATF, I completed twelve weeks of Criminal Investigative Training and fourteen weeks of Special Agent Basic Training.  My responsibilities include the investigation of criminal violations of Titles 18 and 21 of the United States Code.  I am currently assigned to the ATF Field Office in Grand Rapids, Michigan.

3. I have experience in the investigation, apprehension, and prosecution of individuals involved in federal criminal offenses, including the illegal possession of firearms and the illegal distribution of controlled substances, the use of cellular devices to commit those offenses, and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

4. Throughout my career, I have participated in numerous investigations involving violations of federal firearms and narcotics laws.  Through these investigations, my training and experience, and conversations with other agents and law enforcement personnel, I have become familiar with the methods used by drug traffickers to smuggle and safeguard narcotics, to

distribute narcotics, to possess firearms in furtherance of safeguarding narcotics, and to collect and launder drug-related proceeds. These investigations have resulted in the arrest and conviction of criminal defendants and the seizure of firearms and narcotics.

5. Additionally, I have been the affiant for many federal search warrants and have assisted other state and local agencies, as well as Assistant United States Attorneys, in the preparation of affidavits for search warrants. I have directed and participated in the execution of many search warrants relative to investigations of Title 18 and Title 21 of the United States Code. Evidence seized pursuant to these search warrants includes, but is not limited to, firearms, ammunition, controlled substances, drug proceeds, cellular telephones, computers, documents, and records pertaining to the manufacture, possession, and distribution of controlled substances, and proceeds derived from the sale of controlled substances. Further, I have conducted and participated in several firearms investigations that have involved illegal firearm possessors and traffickers utilizing cellular telephones to communicate about illegal firearms transactions and related activities.

6. The facts in this affidavit come from my personal observations, training, experience, and information obtained from other agents, officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. I respectfully submit that there is probable cause to believe that JAQUARI TROTTER possessed a firearm in violation of 18 U.S.C. §§ 922(g)(1) and, additionally, that TROTTER was involved in the commission of other offenses, including the possession of stolen firearms, in violation of 18 U.S.C. § 922(j), and the possession and distribution of illegal drugs, in violation of Title 21 of the United States Code. I further submit that there is probable cause to

believe that evidence of these offenses will be found on the cell phone described in Attachment A.

## II.     Identification of Device to Be Examined

8.     The property to be searched is a white Apple iPhone with a crack on the back of the device, hereinafter the "Target Cellular Device."  The Target Cellular Device is currently located at the Grand Rapids Police Department, 1 Monroe Center, Grand Rapids, MI 49503, and is being held under incident number 20-068873.

9.     The applied-for warrant would authorize the forensic examination of the Target Cellular Device for the purpose of identifying electronically stored data, further described in Attachment B.

## III.    Probable Cause

10.    On October 26, 2020, the Kalamazoo County Sheriff's Department responded to an alarm at D&R Sports (Federal Firearms Licensee) located in Kalamazoo, Michigan.  Upon arrival, deputies observed the glass front door was broken.  A review of the security cameras revealed that nine individuals broke into the store and stole multiple handguns.

11.    On this same date, a firearms inventory was completed at D&R Sports, and it was determined that 48 handguns were stolen.

12.    On November 2, 2020, GRPD responded to the Wealthy Market located at 1012 Wealthy Street SE, Grand Rapids, Michigan on a report of a victim that was shot in the head. GRPD interviewed numerous witnesses who indicated that the shooting was due to a dispute between Jaylen Ruffin and the decedent and that Ruffin had been driving the vehicle that the shooter exited immediately before the attack occurred.

13. On November 4, 2020, a felony warrant for assault was issued for Ruffin out of the Kent County 61st District Court. On this same date, Ruffin was arrested by the Michigan State Police in Lansing, Michigan. As a result of the arrest, a cell phone was seized from Ruffin.

14. On November 5, 2020, a state search warrant was obtained for the contents of Ruffin's cellular phone. Officers subsequently executed the warrant. A review of the contents of the phone revealed that, on October 27, 2020, Ruffin's cellular phone received an incoming video via text message from a contact (Target Cellular Device) identified in Ruffin's phone as "BT." "BT" is known to law enforcement as the alias for TROTTER. The video depicts four unknown individuals in a bedroom where there are approximately 25 handguns on a bed.

15. On this same date, your affiant showed the video to the two owners of D&R Sports. They subsequently analyzed the video and stated that all the firearms depicted in the video were stolen from their shop on October 26, 2020. They were able to make this identification based upon the appearance of the firearms. For example, one of the firearms depicted in the video has a red, white, and blue barrel with a black grip. One of the owners identified this firearm as their Legacy Sports, model Citadel 1911, 45 acp bearing serial number CIT067688. The owner also stated that this firearm comes standard with a wood grip, and that he replaced the wood grip with the black grip.

16. On November 6, 2020, your affiant queried the Target Cellular Device through law enforcement and public databases. The queries revealed that the Target Cellular Device is registered to Jaquari TROTTER with a listed address of 2745 Birchcrest Drive, Apartment 118 in Grand Rapids, Michigan.

17.     On this same date, your affiant queried TROTTER's criminal history, which includes a felony conviction for Carrying a Concealed Weapon dated February 21, 2018 (17th Circuit Court #18-00680-FH).

18.     On November 16, 2020, the Grand Rapids Police received information from a confidential informant about individuals involved in criminal activity.[1] Specifically, the informant told law enforcement that three black males were in possession of narcotics and firearms. The informant also stated that the suspects were in a black SUV with a California license plate and were in the area of Goodrich Street and Commerce Avenue SW in Grand Rapids, Michigan. Officers responded to the area and located a black 2020 Nissan Pathfinder with a California license plate in approximately the same vicinity as the informant had indicated. Officers then conducted a high-risk detention of the parked vehicle. At the time of the stop, the vehicle was only occupied by one individual (later determined to be TROTTER) sitting in the backseat. Officers called TROTTER out of the vehicle. TROTTER then exited the driver's side back passenger seat, leaving the door open.

19.     TROTTER was placed in handcuffs and was searched. Officers located a white Apple iPhone with a crack on the back of the device (Target Cellular Device) on TROTTER's person.

20.     Officers then looked into the vehicle. Inside, they saw a handgun in plain view under the driver's seat. The handgun was positioned in a way that the handle was facing the rear

---

[1] The confidential informant has worked for GRPD for approximately two years. He/she is working as a paid informant and is not seeking leniency for any pending criminal charges. His/her most recent conviction was in 2003 for criminal sexual conduct. GRPD is not aware that the informant has any convictions related to truthfulness. During his/her work with GRPD, the informant has been involved in three controlled purchases that led to the seizure of controlled substances. He/she has also provided other information in the past that law enforcement has been able to corroborate. Finally, he/she has provided information that led to a search warrant, during the execution of which items were recovered that corroborated the informant's information.

seat and appeared to officers that it was only accessible by someone sitting in the back seat of the vehicle.  Officers ultimately determined the firearm to be a Smith and Wesson, model SW9VE, 9mm pistol, bearing serial number DXA5477.   The firearm was loaded with sixteen rounds of 9mm ammunition in the magazine and one round in the chamber.

21. Officers then searched the passenger compartment of the black Nissan Pathfinder and consequently located suspected crack cocaine and marijuana in the driver's side door, and a digital scale in the center console.

22. Based upon my training and experience, I know that individuals in possession of firearms tend to keep firearms on their person and/or also tend to store firearms at places where they are physically present, including their residence(s) or residences of their close associates. I am also aware that individuals who possess firearms also possess other items associated with their firearms including ammunition, magazines, holsters, cases and records indicating purchase, use, maintenance or sale of such items.  I am also aware that individuals who possess firearms frequently possess photographs, films or videotapes of themselves in possession of the firearms.

23. I further know from my training and experience that individuals in possession of firearms tend to keep them for extended periods of time.

24. I further know from my training and experience that individuals who possess stolen firearms may seek to sell some of their ill-gotten gains immediately, but that they also frequently keep one or more of the stolen firearms for their own personal use.  Additionally, I know that these individuals tend to hide the stolen guns in stash locations, their residence(s), or other locations that they then frequently return to in the weeks following their acquisition of the stolen firearms.

25. I further know from my training and experience that individuals who are seeking to sell firearms, particularly those obtained illegally, regularly use their cellular telephone to facilitate

those sales, including posting pictures, videos, and other materials related to the firearms to social media accounts and by sending same to potential customers and other associates.

26. I further know from my training and experience that individuals involved in other illegal activities, including gang activity and drug trafficking, frequently use cellular telephones to facilitate their illegal activities, including but not limited to sending and receiving messages to and from their customers and discussing their illegal activities on social media sites including Facebook.

## IV. Electronic Storage and Forensic Analysis

27. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

   a. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Target Cellular Device because:

      i. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

ii.     Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

iii.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

iv.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

v.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

b.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Target Cellular Device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might

expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

    c. *Manner of execution.* Because this warrant seeks only permission to examine the Device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**V.** **Request for Authorization to Unlock Device with Fingerprints or Face Identification**

    28. Based on my knowledge and experience, I know that certain cellular telephones, including Apple iPhones, may be locked and/or unlocked by personal identification numbers (PIN), gestures or motions, and/or with biometric features, such as thumb and fingerprint recognition (collectively, "fingerprint ID") and/or facial recognition ("facial ID").

    29. If a user enables the fingerprint ID unlock feature on a device, he or she can register several fingerprints that can be used to unlock that device. The user can then use any of the registered fingerprints to unlock the device by pressing the relevant finger(s) to the device's sensor, which typically is found on the front of the device. In my training and experience, users of devices that offer fingerprint ID or facial ID often enable it because it is considered to be a more convenient way to unlock the device than by entering a numeric or alphanumeric passcode or password, as well as a more secure way to protect the device's contents. This is particularly true when the user(s) of the device are engaged in criminal activities and thus have a heightened concern about securing the contents of the device.

    30. In some circumstances, a fingerprint or face cannot be used to unlock a device, and a passcode or password must be used instead. Depending on the configuration of the security settings on the phone, the opportunity to unlock the device via fingerprint ID or facial ID exists

only for a short time. Fingerprint ID and facial ID also may not unlock the device if (1) the device has been turned off or restarted; (2) the device has received a remote lock command; or (3) several unsuccessful attempts to unlock the device are made. Attempting to unlock the Target Cellular Device via fingerprint ID or facial ID is necessary because the government may not otherwise be able to access the data contained on those devices for the purpose of executing the search authorized by this warrant.

31. Although I do not know which of a given user's 10 fingerprints is capable of unlocking a particular device, based on my training and experience I know that it is common for a user to unlock a device via the fingerprints on thumbs or index fingers. Based on the foregoing, I request that the Court authorize law enforcement to press the fingers (including thumbs) of JAQUARI TROTTER to the fingerprint ID sensor or to present his face to the facial ID sensor of the Target Cellular Device to attempt to unlock the device in order to search the contents as authorized by this warrant.

VI. **Conclusion**

32. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Target Cellular Device described in Attachment A to seek the items described in Attachment B.